AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| **v.** | ) | |
| MERGIM ADEMI, | ) | Case No.   5:24-MJ-198 (TWD) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant(s)** | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 21, 2024 and March 28, 2024 in the county of Onondaga in the Northern

District of New York the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(d)(1) | Transfer of firearm to a person convicted of a crime punishable by imprisonment for a term exceeding one year |

This criminal complaint is based on these facts:
See attached affidavit.

☒   Continued on the attached sheet.

*Richard R. Gardinier*
_____
*Complainant's signature*

Richard Gardinier, Special Agent, ATF
_____
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   April 12, 2024
_____
*Judge's signature*

City and State:   Syracuse, NY

Hon. Thérèse Wiley Dancks, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Richard Gardinier, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of a criminal complaint charging Mergim Ademi with violating Title 18, United States Code, Section 922(d)(1) (transfer of firearm and ammunition to a felon).

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January 2, 2017. I have attended the Federal Law Enforcement Training Center (FLETC), located in Glynco, Georgia, where in I was enrolled in, and successfully completed, both Criminal Investigator Training Program (CITP) and Special Agent Basic Training (SABT). During the course of my training, I received instruction on physical surveillance, interviewing sources of information and defendants, reviewing telephone and financial records, applying for and serving search warrants, firearms trafficking, etc.

3.      Prior to my time with ATF, I was employed by the United States Secret Service, Uniformed Division (USSS/UD) for four years. I was enrolled in and successfully completed the Uniformed Police Training Program (UPTP) at FLETC, as well as New Officer Training with the USSS/UD, located in Beltsville, Maryland.

4.       I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for the offenses enumerated in Title 18, 21 and 26, United States Code.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

6.      Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that Mergim Ademi has violated Title 18, United States Code, Section 922(d)(1) (transfer of a firearm and ammunition to a felon).

## FACTS SUPPORTING PROBABLE CAUSE

7.      Since approximately December 2023, law enforcement has been investigating Mergim Ademi for various firearms offenses related to his illicit sales of firearms and ammunition. As part of that investigation, as described in more detail below: (a) during the week of March 17, 2024, ADEMI sold a cooperating source (CS)[1] two firearms (one of which was a Privately Made Firearm or PMF) [2] and a Forced Reset Trigger device; and (b) during the week of March 25, 2024, ADEMI sold a cooperating source 3 pistols (one of which was a PMF) and 6 rounds of 9mm ammunition.

**A.      ADEMI Sells Firearms and a Forced Reset Trigger (Week of March 17, 2024)**

8.      During the week of March 17, 2024, at the ATF's direction, a controlled purchase of a pistol, a revolver and a machine-gun conversion device was conducted. Based on my participation in the purchase and discussions with CS, I have learned, in substance and in part, the following:

---

[1] CS has been working with ATF for several years. S/he has proven reliable over the course of more than 5 investigations, leading to more than 5 federal arrests. CS has no pending charges and is working for monetary compensation. CS has a prior felony conviction.

[2] Privately Made Firearms, commonly referred to as "ghost guns" are firearms manufactured from parts kits, either commercially or homemade, and assembled by an individual. Most PMFs do not contain make, model, caliber or serial number identifiers, thus preventing law enforcement the ability to trace them to a purchaser.

a.      In a series of both text messages and phone calls exchanged with the phone number ending in 1401 (the "Subject Phone"), CS coordinated the purchase of multiple firearms from **ADEMI**, who agreed to make the sale to CS. These messages were preserved and were observed by law enforcement.

b.      Before the agreed-upon time to conduct the transaction, law enforcement met with CS at a separate location. CS was provided with funds for the transaction, and was outfitted with recording and transmitting devices to capture the transaction in audio and video format. CS, as well as his/her vehicle were searched for contraband and money, none of which was found. The recording devices were activated before CS drove to the transaction location.

c.      CS called **ADEMI** by dialing the Subject Phone just prior to meeting. **ADEMI** was overheard by law enforcement via the audio recording device directing CS to meet near Address A, in Syracuse.[3] **ADEMI** was observed via City of Syracuse Police Department (SPD) Criminal Observation and Protection System stationary cameras (COPS), departing Address A in a gray 2013 BMW 328si (the BMW), which according to New York State DMV records, is registered to **ADEMI** at Address A. **ADEMI** appeared alone in the BMW and was observed operating in the area of the Address A for the entirety of time, throughout which he met with no one.

d.      **ADEMI** was observed near the intersection of Milton Avenue and Willis Avenue in the BMW**.** While traveling, CS and **ADEMI** crossed paths in traffic. **ADEMI** was then

---

[3] According to tax records, Address A is owned by an individual with the same last name as ADEMI. Commercial databases list Address A as ADEMI's residence. Law enforcement performed physical surveillance at Address A at different times of day, multiple times per week since approximately January 2024 and have observed ADEMI coming and going from Address A. I therefore believe that Address A is ADEMI's residence.

overheard on the audio recording contacting CS by phone and directing CS to follow behind **ADEMI** in the BMW to the meeting location. CS was tracked and surveilled as CS followed **ADEMI**, who was driving the BMW, to the 300 block of Willis Avenue where they parked at the entrance to Willis Park.

      e.    At the location, which was the entrance to Lewis Park, located in the 300 block of Lewis Street, Syracuse, New York, CS met with **ADEMI**. This was confirmed by both stationary cameras, physical surveillance and the later debrief of CS.

      f.    CS gave **ADEMI** the agreed-upon payment for a Privately Made Firearm (PMF), black in color, .40 caliber with no identifiable serial number; a Rossi, model M88, imported by Interarms, .38 special caliber revolver bearing serial number W302437 and a Forced Reset Trigger (FRT).

      g.    During the recorded transaction, ADEMI told CS about a conversation ADEMI had with a third party in which that person speculated that CS might be a "cop." CS replied, in sum and substance "I'm a felon." ADEMI responded, "Oh, you're a felon?" ADEMI continued and finished the transfer of the firearms after hearing this information.

9.    ADEMI was identified as the individual who sold CS the firearms during this transaction as follows: (1) law enforcement officers performing surveillance of the transaction recognized ADEMI from prior personal interactions; and (2) after the transaction, CS was shown a photograph of ADEMI and confirmed that he was the individual who had just sold him the firearms.

10.    After the transaction, CS returned to the designated meeting location with law enforcement, while under surveillance. CS gave law enforcement the PMF pistol, revolver, and

FRT. Law enforcement collected the recording devices and once again searched CS and his/her vehicle for contraband and money, with negative results.

11.     I have received training in determining the origin of firearms. I examined the Rossi revolver described above and based on my training and experience and after conducting research, have determined that the Rossi revolver was not manufactured in the state of New York.

**B.     ADEMI Sells Two Stolen Pistols and Ammunition (Week of March 24, 2024)**

12.     During the week of March 24, 2024, at ATF's direction, a controlled purchase of a Glock, model 43, 9mm caliber pistol bearing serial number BEVW289, a Sig Sauer, model P365, 9mm caliber pistol bearing serial number 66F189924 and six rounds of Blazer, 9mm caliber ammunition, was conducted. Based on my participation in the purchase and discussions with CS, I have learned, in substance and in part, the following:

a.     In a series of messages and phone calls with the Subject Phone, CS coordinated the purchase of the firearms and ammunition from **ADEMI**. **ADEMI** agreed to make the sale. These messages and call were recorded and observed by law enforcement.

b.     Before the agreed-upon time to conduct the transaction, law enforcement met with CS at a separate location. CS was provided with funds for the transaction and was outfitted with recording and transmitting devices to capture the transaction in audio and video format. CS and their vehicle were searched for contraband and money, none was found. The recording devices were activated before CS traveled to the transaction location.

c.     CS placed a call to **ADEMI** by calling the Subject Phone and was overheard by law enforcement being directed by **ADEMI** to meet him at an address on Kingsley Place, Syracuse, NY to conduct the transaction. Around that same time, a white 2017 Volkswagen Jetta

(the Jetta)[4] was observed by physical and electronic surveillance returning to Address A. **ADEMI** was observed by surveillance units exiting the Jetta and entering Address A, appearing empty handed. A short time later, **ADEMI** was observed exiting Address A carrying a black bag which he placed into the trunk of the Jetta. **ADEMI** was then surveilled proceeding directly to the Kingsley Place meeting location.

   d. CS drove to the agreed-upon address in Syracuse, New York under physical and electronic surveillance, where CS met with **ADEMI**, as confirmed by the recordings and debrief of CS afterwards. **ADEMI** provided CS1 with the aforementioned firearms and ammunition and CS1 provided **ADEMI** with an amount of pre-recorded, government funds as payment.

   e. At the conclusion of the transaction, **ADEMI** drove away in the Jetta and was followed by surveillance for a period of time until continuation would have jeopardized the investigation.

   13. During this transaction, **ADEMI**'s face was captured by the CS's recording device, as seen in the screenshot below:

---

[4] While conducting physical surveillance at Address A, law enforcement has observed the Jetta parked in the driveway or on the street near Address A.



14.     After the transaction, CS returned to the designated meeting location with law enforcement, while under surveillance. CS gave law enforcement the firearms and ammunition. Law enforcement collected the recording devices and once again searched CS for contraband and money, with negative results.

15.     Special Agent Gardinier again reviewed the Sig Sauer and Glock pistols as well as the ammunition described above and confirmed none were manufactured in the state of New York. A search of a law enforcement database of the serial numbers for the two firearms purchased during this transaction showed that both firearms had previously been reported stolen.

16.     Based on the foregoing, I respectfully submit that there is probable cause to believe that Mergim ADEMI has violated Title 18, United States Code, Section 922(d)(1) (transfer of a firearm to a felon), and respectfully request that the Court authorize the filing of the accompanying complaint so that ADEMI may be brought to court for further proceedings in accordance with law.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

*Richard R. Gardinier*

Richard Gardinier
Special Agent
ATF

I, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on April __12___, 2024 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Thérèse Wiley Dancks
United States Magistrate Judge

8